# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAWN LINK,

      *Plaintiff,*

  vs.

                             Case No. 22-cv-2111-EFM

LAWRENCE MEMORIAL HOSPITAL, *et al.*,

      *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Dawn Link filed this action against Defendants Lawrence Memorial Hospital, Dr. Blake Conklin, Megan Pedersen, Alyssa Austin, and Holly Soetaert—all employees of the Hospital—after her private health information was allegedly made public to other employees of the Hospital.  Plaintiff asserts five counts against Defendants: (I) breach of confidentiality, (II) intrusion upon seclusion, (III) giving publicity to private facts, (IV) intentional infliction of emotional distress, and (V) retaliation under the Family Medical Leave Act ("FMLA").  Plaintiff also seeks a temporary restraining order against Defendants pursuant to K.S.A. § 60-903.

Defendants' move to dismiss each count against them under Fed. R. Civ. P. 12(b)(6).  As to Counts I through IV, Defendants contend that Plaintiff failed to provide pre-lawsuit notice, as required by the Kansas Tort Claims Act ("KTCA").  In the alternative, they argue these counts fail

to state a plausible claim for relief.  Defendants further contend that Count V must be dismissed because Plaintiff has failed to allege a monetary loss under the FMLA, and that no temporary restraining order is appropriate.  The Court agrees only in part.  As laid out more fully below, the Court concludes that Plaintiff's pre-lawsuit notice satisfied the statute and that she has stated a claim for invasion of privacy by intrusion upon seclusion and publication of private facts.  But her claims for breach of confidentiality, intentional infliction of emotional distress, FMLA retaliation, and a temporary restraining order under Kansas law should be dismissed.  Therefore, Defendants' Motion (Doc. 7) is granted in part and denied in part.

## I.        Factual and Procedural Background[1]

The Hospital is a governmental entity located in Douglas County, Kansas.  Plaintiff, at all times relevant to this lawsuit, was employed by the Hospital.  In early 2021, Plaintiff was under the care of a physician for a medical condition that interfered with her work schedule.  Plaintiff's supervisor, Alyssa Austin, advised Plaintiff of her right to take FMLA leave related to this condition.  Plaintiff agreed and began taking FMLA leave.

Around this time, the COVID-19 pandemic was still highly prevalent in Douglas County.  The Hospital's policy prohibited symptomatic employees from reporting for duty.  As a result, Plaintiff missed work in addition to her leave under the FMLA.  Austin and Holly Soetaert, Plaintiff's other supervisor, were concerned with what they viewed as Plaintiff's excessive absences.  They met with Plaintiff to discuss this issue and advised her that the Hospital's doctors

---

[1] The following facts, taken from Plaintiff's state court petition, are assumed true for the purpose of ruling on Defendants' Motion to Dismiss under Rule 12(b)(6).

would not issue paperwork supporting Plaintiff's continued FMLA leave for her medical condition.

Plaintiff later began seeing Dr. Blake Conklin, a physician at the Hospital, for a condition unrelated to her initial ailment. Plaintiff describes this condition as one of "an embarrassing nature" that temporarily interfered with her ability to work.

On April 1, 2021, Plaintiff took FLMA leave related to her initial medical condition. When she returned to work, Austin and Soetaert again asked to meet with Plaintiff. Plaintiff's use of FMLA leave and her absences due to COVID-19 were described as showing a pattern of excessive absences. Both supervisors warned Plaintiff that the continuation of this pattern might subject her to discipline. At the end of April, Plaintiff had a follow-up meeting with Austin, Soetaert, and Megan Pedersen, senior director at the Hospital. Pedersen informed Plaintiff that Austin and Seotaert had been misinformed and the earlier meeting should never have happened.

About a week later, on May 4, 2021, Pedersen sent an email to several clinics and departments within the Hospital. The email was apparently meant to provide an example on an ongoing issue within the Hospital's referral process. For this purpose, Pedersen used Plaintiff's actual medical records taken related to her treatment with Dr. Conklin. These records were not redacted, and instead included Plaintiff's name, the treating physician, and the diagnosis. Shortly after the email was sent, Pedersen approached Plaintiff in an open corridor, in front of patients and co-workers, and attempted to discuss the revelation of Plaintiff's medical records.

The email was recalled two days after it was sent. Plaintiff believes the message remained accessible from staff computers and accounts for several days after it was recalled.

After the email, Plaintiff alleges she has suffered ongoing embarrassment related to revelation of her private medical information to her co-workers. Specifically, she believes she has

overheard conversations between co-workers about her condition.    Plaintiff has suffered humiliation, embarrassment, and extreme anxiety as a result of the email.  Attempts to discuss the email and the related harm suffered with Hospital officials did not yield results satisfactory to Plaintiff.

When it became clear no internal resolution to the situation would be available, Plaintiff retained counsel.  On July 1, 2021, Plaintiff's counsel mailed a demand letter "as notice of her claims" to the named Defendants and the LMH Foundation,[2] reportedly due to its close integration with Hospital staff and clinics.  Counsel received no response.  Thereafter, he attempted to hand deliver a copy to the Hospital.  He was directed to Daniel Cupps, Director of Risk Management, who accepted the letter on August 2, 2021.

Plaintiff filed a petition in Douglas County District Court on March 1, 2022.  Defendants thereafter removed the case to this Court and now move to dismiss each claim asserted against them under Fed. R. Civ. P. 12(b)(6).

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard

---

[2] The LMH Foundation was not named as a Defendant in this lawsuit.

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]

### III.    Analysis

As noted above, Plaintiff brings four tort claims under Kansas law against Defendants related to the release of Plaintiff's private medical records within the Hospital.  She further alleges that Defendants retaliated against her in violation of her rights under the FMLA.  Her state court petition also sought a temporary restraining order against Defendants under K.S.A. § 60-903.  The Court addresses each in turn.

### A.    Tort Claims Under Kansas Law.

"The KTCA applies to tort claims brought against governmental entities and their employees."[9]  Plaintiff does not dispute that the Hospital is a governmental entity, and therefore Plaintiff's tort claims against Defendants in Counts I through IV fall under the purview of the KTCA.  The Court first considers Defendants' argument that Plaintiff failed to provide proper pre-lawsuit notice as required by the KTCA, and thereafter turns to whether Plaintiff's petition states a claim for each of the alleged invasion of privacy torts.

---

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[9] *R.P. v. First Student Inc.*, 62 Kan. App. 2d 371, 515 P.3d 283, 287 (2022).

1.      *Pre-Lawsuit Notice Under the KTCA*

The KTCA provides that "[a]ny person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action."[10] The notice must include:

> (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.[11]

The claimant must file the notice with the "clerk or governing body of the municipality."[12]  The claimant shall not commence a civil action "until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first."[13]

"The filing of a proper notice under K.S.A. 12–105b(d) is a condition precedent to the filing of an action against a municipality."[14]  A claimant may substantially comply with the statutory requirements and still provide proper notice.[15]  But a claimant who serves the notice on

---

[10] K.S.A. § 12-105b(d).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Dunegan v. City of Council Grove, Kan. Water Dep't*, 77 F. Supp. 2d 1192, 1205 (D. Kan. 1999); *see also Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 280 Kan. 869, 127 P.3d 319, 325 (2006) ("Failure to provide the statutory notice of a claim . . . precludes relief.").

[15] K.S.A. § 12-105b(d) ("In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.").

anyone "who is not the 'clerk or governing body of the municipality' " does not substantially comply with the statute.[16]  To allow otherwise would contravene the clear statutory language.[17]

Defendant contends that this is a simple, cut and dried matter because Plaintiff did not serve the "clerk or governing body" of the Hospital.   They view the statutory requirement as unflinchingly rigid because of the Kansas Supreme Court's statement that "substantial compliance . . . does not authorize the court to create new methods of serving notice of claim."[18]  While this citation is of course accurate, it does not take into account the factual nuance of the instant case.  This is because the Hospital does not have a "clerk."  It does have a governing body— its Board of Trustees.[19]  "When an entity covered under K.S.A. 12–105b has no clerk, the appellate courts have held that service of the notice on an officer or executive with similar standing or authority within the organization amounts to substantial compliance."[20]  Further, where the municipal entity specifically requests that communications be made through a particular person, it makes little sense to punish a claimant for respecting the entities wishes and serving notice on the requested communicant.[21]

---

[16] *Myers*, 127 P.3d at 325 (quoting K.S.A. § 12-105b(d)).

[17] *Id.*

[18] *Id.*

[19] *See Smith v. Kennedy*, 26 Kan. App. 2d 351, 355, 985 P.2d 715, 718 (1999) (interpreting K.S.A. § 12-105a(b)'s definition of "governing body" to include a county hospital's board of trustees).

[20] *Sleeth v. Sedan City Hosp.*, 268 P.3d 506, 2012 WL 402018, at *5 (Kan. Ct. App. 2012), *rev'd on other grounds*, 298 Kan. 853, 317 P.3d 782 (2014). *See also Orr v. Heiman*, 270 Kan. 109, 12 P.3d 387, 390 (2000) (filing with school superintendent complied with clerk requirement); *Smith*, 985 P.2d at 722 (filing with CEO of entity complied with clerk requirement).

[21] *See Sleeth*, 2012 WL 402018, at *5 ("The hospital, through its insurance carrier's representative, requested further communications go to that representative.  So delivery of the May 2, 2010, letter to the insurance representative conformed to the statutory requirements for service.").

Plaintiff substantially complied with K.S.A § 12-105b(d)'s notice requirement by serving a demand letter on Daniel Cupps, the Hospital's Director of Risk Management.  After receiving no response to its demand letters sent to the named Defendants and the LMH Foundation, Plaintiff's counsel attempted to hand deliver a copy of the letter to the Hospital.  According to Plaintiff, the Hospital sent out Cupps as "the only employee with whom counsel could communicate on behalf" of the Hospital.  The Hospital does not have a "clerk," so it appears Plaintiff attempted to provide notice to the either the Board of Trustees or the highest-level employee of the Hospital available.  She was provided access to its Director of Risk Management. The Court concludes this substantially complied with K.S.A. § 12-105b(d), given that the Hospital offered this person to receive the notice on its behalf.  The purpose of K.S.A. § 12-105b(d) is to Kansas ensure "that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim,"[22]  which was satisfied here.  As such, the Court concludes Plaintiff substantially complied the statute's notice requirement.  Dismissal of Plaintiff's invasion of privacy claims under Rule 12(b)(6) is not appropriate on this ground.

2.  *Breach of Confidentiality*

Count I of Plaintiff's petition brings a claim for "breach of confidentiality," a tort cause of action she believes is recognized under Kansas law.  She asserts that Defendant owed a duty of confidentiality to her under (1) the Health Insurance Portability and Accountability Act ("HIPAA"), (2) Kansas medical licensure laws, (3) common law principles of trust, and (4) under the Hippocratic Oath.  Plaintiff seems to recognize that this purported tort is not as "clearly

---

[22] *Smith*, 985 P.2d at 722.

defined" as her other claims but asserts all the same that it is a cause of action available to her under Kansas law.

The Court is not convinced. Plaintiff's contention that Kansas courts have "performed cursory analysis" of an independent tort for breach of confidentiality is easily dismissed, as neither the Kansas Court of Appeals decision in *Keeler v. Peh*[23] nor the Kansas Supreme Court decision in *Gassmann v. Evangelical Lutheran Good Samaritan Society*[24] support this contention.[25] Nor did *Johnston v. Alberg*,[26] an unpublished Kansas Court of Appeals case which addressed the overlap between a legal malpractice claim and a breach of fiduciary duty, recognize an independent privacy tort related to a breach of confidentiality.[27]

The supposed sources of the duty of confidentiality owed to her are vague and unsupported. Plaintiff alleges that Kansas medical licensure laws, common law principles of trust, and the Hippocratic oath all form the foundation for this duty, but she neglects to offer any inkling of specificity or supporting Kansas case law. And Plaintiff's claim that she is seeking to vindicate the duty of confidentiality owed to her under HIPPA runs headlong into the Tenth Circuit's jurisprudence that indicates HIPPA does not create a private right of action for alleged disclosures of the plaintiff's confidential medical information.[28] Though this does not directly answer the

---

[23] 479 P.3d 519, 2021 WL 301214 (Kan. Ct. App. 2021).

[24] 261 Kan. 725, 933 P.2d 743 (1997).

[25] *See Keeler*, 2021 WL 301214, at *7 (affirming the district court's dismissal of the plaintiff's "breach of confidentiality" claim because it was simply another way of asserting his medical malpractice claim); *Gassmann*, 933 P.2d at 748 (discussing confidentiality in the context of the after-acquired evidence doctrine).

[26] 329 P.3d 557, 2014 WL 3732015 (Kan. Ct. App. 2014)

[27] *See id.* at *12.

[28] *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information."); *Freier v. Colorado*, 804 F. App'x 890, 892 (10th Cir. 2020) (amendment to HIPAA did not create a private right of action).

-9-

question of whether Kansas courts would recognize a tort duty of confidentiality based on the guarantees of HIPAA, Plaintiff fails to provide any citation to legal authority that suggests Kansas would recognize such a duty.

Based on the bare presentation by Plaintiff, the Court is not prepared to conclude that Kansas law recognizes, among the ranks of privacy torts, an independent cause of action for breach of confidentiality for the disclosure of private medical information.  Count I of Plaintiff's petition is therefore dismissed.

3.      *Intrusion Upon Seclusion*

Plaintiff finds herself on more solid ground with allegations that Defendants violated her privacy by intruding upon her seclusion.  Kansas law clearly recognizes the tort of invasion of privacy by intrusion upon seclusion, the elements of which are (1) "proof of an intentional interference with the solitude or seclusion of a person's physical being or prying into a person's private affairs and concerns" and (2) "proof that a reasonable person would be highly offended by the intrusion."[29]

Defendants contend that Plaintiff's claim for intrusion upon seclusion fails because she has not properly alleged that the disclosure of her private medical information would be "highly offensive" to a reasonable person.  The Court disagrees.  Plaintiff has not, as Defendants state, relied on the bare assertion that because her medical information was disclosed, that alone would be highly offensive to a reasonable person.  Rather, Plaintiff has alleged that the medical information improperly disclosed was of a "particularly sensitive and embarrassing nature."  She has also alleged that it was shared with over one hundred of her co-workers, many of whom she

---

[29] *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 229 P.3d 389, 396 (2010)

interacts with frequently.  This is sufficient to plausibly allege the invasion would be highly offensive to a reasonable person.  Defendants are incorrect in arguing that Plaintiff's petition must provide, in excruciating detail, the nature of her sensitive and embarrassing medical ailment for the doors of the courthouse to remain open to her.  Count II will not be dismissed.

### 4.    *Publication of Private Facts*

The Kansas Supreme Court adopted § 652D of the Second Restatement of Torts, which recognizes the tort of publicity given to private life.[30]  One can be subject to liability for such an invasion "if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."[31]

Defendant again argues that Plaintiff has failed to state a claim because she has not alleged the disclosure of her private medical information would be highly offensive to a reasonable person.  As discussed above, the Court has rejected this argument.  Count III will not be dismissed.

### 5.    *Intentional Infliction of Emotional Distress*

Plaintiff must plausibly allege four elements to avoid dismissal of her claim of intentional infliction of emotional distress: "(1) [t]he conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[32]  Defendant attacks Plaintiff's showings on the second and fourth elements.

---

[30] *Werner v. Kliewer*, 238 Kan. 289, 710 P.2d 1250, 1256 (1985).

[31] Restatement (Second) of Torts § 652D (Am. L. Inst. 1977).

[32] *Valadez*, 229 P.3d at 394 (citing *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1029 (1991)).

Conduct that is extreme or outrageous "must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind."[33] "The law will not intervene where someone's feelings merely are hurt."[34] Sufficiently extreme and outrageous conduct "goes beyond the bounds of decency and is utterly intolerable in a civilized society."[35]

Plaintiff has properly alleged extreme and outrageous conduct. Defendants again reduces Plaintiff's claim to a complaint that her medical records were improperly shared, without anything more. To hear Defendant tell it, one might think the only records improperly shared were Plaintiff's blood pressure readings or something similarly mundane. But this is not what Plaintiff has alleged. Rather, she alleges that the medical records shared were of "a particularly sensitive and embarrassing nature." And she alleges this was intentionally shared with hundreds of her co-workers. These are allegations of conduct that goes beyond mere hurt feelings or inconsiderate actions.

Plaintiff's mental distress due to the outrageous conduct of Defendants must also be "extreme and severe." "Elevated fright, continuing concern, embarrassment, worry, and nervousness do not by themselves constitute sufficient harm to a plaintiff to warrant the award of damages for outrage."[36] Likewise, "headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares" are insufficient.[37] While "there is no laundry list of what qualifies as the requisite level of severity of emotional distress" the Kansas Supreme Court

---

[33] *Id.*

[34] *Id.*

[35] *Id.* (citing *Taiwo*, 822 P.2d at 1029).

[36] *Id.* at 395 (citations omitted).

[37] *Id.* (quoting Boston, Kline, & Brown, Emotional Injuries: Law and Practice § 22:7 (1998)).

has indicated that "physical symptoms probably would suffice."[38]   In the absence of physical symptoms, mental symptoms must be "long lasting and debilitating."[39]

Plaintiff does not plausibly allege extreme and severe emotional distress.  All Plaintiff alleges to this effect is that she "humiliated, is embarrassed, and has suffered from extreme anxiety as a result of the disclosure of her private information."   She does not allege any physical symptoms, and the only alleged mental symptoms—anxiety and embarrassment— are not alleged to have been long lasting and debilitating.  This is not, under Kansas law, sufficiently extreme and severe to satisfy the fourth element of a claim of intentional infliction of emotional distress. Accordingly, Count IV is dismissed.

## B.    FMLA Retaliation.

The FMLA prohibits employers from retaliating against employees who exercise their rights under the statute.[40]   To state a claim for retaliation in violation of the FMLA, Plaintiff must plausibly allege "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[41]   In addition, FMLA claims must allege "actual monetary losses" to proceed.[42]   The statute provides that an employer who violates the FMLA shall be liable for damages equal to the amount of:

> (I) any wages, salary, employment benefits, or other compensation denied or lost
> to such employee by reason of the violation; or

---

[38] *Id.* (quoting Boston, Kline, & Brown, Emotional Injuries: Law and Practice § 22:7 (1998)).

[39] *Id.* (quoting Boston, Kline, & Brown, Emotional Injuries: Law and Practice § 22:7 (1998)).

[40] *See* 29 U.S.C. § 2615.

[41] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

[42] *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009).

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.[43]

"Because recovery is thus unambiguously limited to actual monetary losses, courts have consistently refused to award FMLA recovery for such other claims as consequential damages and emotional distress damages."[44]

Plaintiff seems to concede that she does not seek damages for "pecuniary loss."  Rather, she believes the FMLA allows her redress for an alleged hostile work environment due to the dissemination of her private medical information.  She alleges no lost wages, benefits, compensation, or any other monetary entitlement.  Because the FMLA does not permit the recovery of alleged non-monetary losses, the Court must dismiss Plaintiff's claim for retaliation under the FLMA.

## C.    Request for Temporary Injunctive Relief

Finally, Plaintiff's state court petition originally sought temporary injunctive relief under K.S.A. § 60-903.  Plaintiff recognizes this request is now moot as the relevant timeframe has expired and the action has been removed to federal court.  Accordingly, Plaintiff's request is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **GRANTED in part and DENIED in part.**  Counts I, IV, V, and VI are dismissed.  As Defendants

---

[43] *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001) (citing 29 U.S.C. 2617(a)(1)(A)(i)).

[44] *Id.* (citations omitted).

Conklin, Austin, and Soetaert are only named in those Counts, those Defendants are dismissed from the case.

**IT IS SO ORDERED.**

Dated this 19th day of October, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE